Good morning. May it please the Court, I'm Sam Miarelli, representing Objector Eric Lindberg. I'd like to reserve five minutes for rebuttal, if possible. From 2009 to 2014, Starkist systematically underfilled cans of tuna purchased by millions of Americans, including Mr. Lindberg. The class likely was cheated out of $83.3 million in the fraud. Starkist and plaintiffs litigated a copycat action of a government action for about 26 months before settling for $8 million in cash and $4 million in coupons. We're asking the Court whether $1.2 million in attorney's fees can be awarded before the $4 million in tuna coupons have been issued, let alone redeemed. Now, as the panel's pre-oral argument order seems to contemplate in our brief describes, food voucher is just a euphemism for coupon, and it's only used to try to avoid the attorney's fee restrictions of CAFA. Now, to answer the question from the order, the district court could not have permissibly used a large star approach to award attorney's fees for a settlement that provides only cash and coupon relief. There's no equitable relief in the settlement agreement. The entire class recovery is either cash or coupons. CAFA Section 1712a requires that, quote, the portion of any attorney's fee awarded to class counsel that is attributable to the award of coupons shall be based on the value to class members of the coupons that are redeemed. This Court's H.P. Inkjet Printer case holds that, quote, an attorney's fee award is attributable to the award of coupons where the attorney's fee award is a consequence of the award of coupons. That's at 1181. So I just want to clarify. Are you saying there couldn't be a lodestar method here at all or that the way this district court did the lodestar method is not okay? Your Honor, our position is there could not be a lodestar award at all because the only award is cash and coupons, which means that Section 1712a requires. And if you look at the… And you don't think B applies? No, because there's no equitable relief, Your Honor. But C is about equitable relief, not B. So according to this Court's decision in H.P. Inkjet Printer, especially looking at footnote 18, H.P. Inkjet Printer was especially concerned and took issue with the dissent in saying that if you could award a lodestar on the basis of a settlement like this where you have coupons and cash and no equity, then you would read subsection A out of the statute altogether. The statute is very clear. If the basis for the award is coupons, then it has to be decided under subsection A. And this… Wouldn't that be if it's only coupons? So what if it's, I mean, as here, coupons and cash, why couldn't you treat coupons as needing to look at the redemption rate, do that part that way, then take into the cash and do some kind of lodestar method based on the result? So, Your Honor, you could separate them. But when you separate them, you still have to use the normal method. You can't use a lodestar method. So there's two points on this. One is that the plain language of Section 1712A contemplates that you might have a mixed settlement. It says the portion of an attorney's fee based on coupons. In this case, you have a portion based on cash and a portion based on coupons. And that's the position the district court took. That's the position the plaintiffs took before the district court and also in their responsive briefs here. If the statute was read in any other way, essentially Section 1712A would be a nullity if you don't have a pure coupon settlement. And again, H.P. Inkjet Printer contemplated this. And H.P. Inkjet Printer said that the only time B and then C come in is if there's some sort of non-liquidatable relief, like equitable relief. Well, C talks about equitable relief, but I guess I'm still not sure why in B you couldn't take into account the redemption value of the coupons and any other value, put it together, look at how good that settlement is, and then figure out whether there's a multiplier due based on that value. So, Your Honor, even if you did that, according to H.P. Inkjet Printer, and again I'll point you to footnote 18, it points out that you can't actually do a proper lodestar analysis of the coupons, which includes the success of counsel, until you know what the redemption rate value of the coupons are. But does that mean attorney's fees could not be paid until the coupons are actually redeemed? That's correct, Your Honor. So you can't even calculate an attorney's fee the way you interpret 1712A until there's an actual redemption? And when is there ever going to be a final redemption? Because people can sit on these forever if they don't have an expiration date. So, Your Honor, I agree with you that you cannot do the calculation until after the coupons are redeemed, and I'll point you to another passage of H.P. Inkjet Printer. Before you get there, why can't you? Why can't you have an expert come in there and tell us what the amount of the redemption is likely to be and what it can be and what it might not be and make the determination at that point? So, Your Honor, first, that didn't happen in this case. I understand, but why couldn't it happen? So, Your Honor, again, that would violate the language of the statute. Why? So the statute does not… Because all we're really talking about is a redemption, if in fact they're a coupon, but a redemption, and a redemption which we have all these kind of experts come in and talk to courts all the time about what the redemption might or might not be. So why can't we have that happen here if, in fact, these are coupons? Your Honor, the reason is because of Congress's language in the statute. The statute says that it's based on the actual value of the coupons redeemed. I understand that, but the actual value is something that experts can testify to as much as not. I mean, I'm just trying to figure out why it is that I've got to wait forever to have this to happen if we can have someone come in and talk to me, which I have… I mean, I'm always trying to find, as a district court, what values are, and I always have experts come in and talk to me about what values are, and I guess I'm trying to figure out why I've got to wait. Your Honor, the reason the court has to wait is because of Congress's language in the statute. I don't know that that Congress's language… I mean, I'm talking about all kinds of damages, which I have experts come and talk to me about, and the language is just as clear as Congress's language, and I still allow an expert to come and talk to me about it, and then I make the determination. And, Your Honor, I would just say on that point that this case is very similar to H.P. Inkjet Printer in that the way this coupon was structured to quote H.P. Inkjet Printer essentially invited the error here. Well, I guess I've asked you the question, and I know where your answer is. Tell me, first of all, why are these coupons? Your Honor, they're coupons because it's a… It seems to me that they can spend these coupons only on tuna, right? Yes, Your Honor. That's the only part of it that makes them such that they would be a coupon. It's because, guess what, they don't have to spend any of their own money. They don't expire. They can be transferred. They have the option of getting cash rather than the coupon. All of those would suggest, if I follow DVD rental, that they're not coupons at all. So, Your Honor, our position is that DVD rental is the very edge in the United States' jurisprudence… The very edge. …of saying something's not a coupon. The very edge, but they're nonetheless my very middle. I mean, you want to say they're the very edge because some other court hasn't said it, but my court said it, and so I'm going to apply DVD rental whether you like it or whether you don't. And, Your Honor, we don't disagree. You can take it up, and somebody who's a great deal smarter than me at least has the last word. That's the best I can say about them. And they can tell me I don't know what I'm talking about. But until that happens, I got DVD dead in front of me, and I'm still back to the question. Why is this a coupon? The only part of it that would make it a coupon, looking at DVD, is that you can't spend it on any item. You've got to spend it only on tuna. Yes, Your Honor. And it's got to be a tuna can. But guess what? They don't spend their own money. Your Honor. They don't expire. They can be transferred. They have the option of getting cash instead of the coupon. The coupon looks to me like it's not coupons at all. Your Honor, just on the point about not having to spend any cash, this has been a claim made over and over. But there's actually no certainty that that's the case. And certainly – What do you mean there's no certainty? You're saying that I can't use this coupon to purchase tuna and not put out any cash? Your Honor, you can't use the entire coupon to purchase tuna. So the coupon's likely to be – You can. You absolutely can. The only thing that you can't do is you might leave some coupon holding because it doesn't actually deal with the tuna you purchased. Correct, Your Honor. And in that case, the redemption value of the coupon now has been reduced because if every coupon redemption is only for 80 percent or 70 percent, then suddenly this $4 million isn't for. I'm not suggesting it is. It's a voucher. You want to label it a coupon to get me into the coupon mess. But I'm saying if I look at all the reasons why this might be a coupon or why it may not, there's only one that I can't spend it on any item I want to. I've got to spend it on tuna. And the tuna, in fact, is the very thing that was the problem. That's your best effort that it's a coupon. But every other factor makes it a voucher that's not a coupon at all. And if it's a voucher that's not a coupon at all, the district court was right. Correct? Your Honor, if it was not a coupon, then, sure, CAFA would not apply it. And the district court was correct in its judgment here. On the attorney's fee, but not necessarily on the other points that I don't think I'll have time to address before the court here. I thought you would have made an argument about the difference with NRA DVD and the amount of cash that someone could get instead of getting this voucher coupon, whatever. It's pretty different, isn't it? Yes, Your Honor, and this gets to our point about notice, I think, also, is that there's a 94% difference between what was noticed and what the class members get. And we think there's a serious due process question. If you can read a pro rata statement in a notice, which is for administration purposes of a settlement, to allow a 94% reduction. I read the notice here, the settlement notice. The settlement notice clearly identifies the total amount of the settlement. It clearly identifies the amount that could be claimed. It clearly identifies the fact that the amount may be reduced and said diluted. In fact, if the claims exceed the available funds, there's nothing misleading about that. Your Honor, there is some evidence. There were some individuals that wrote letters to the court that are in the record about expecting $25. And the point of notice is it's supposed to allow a lay person to make their rational choice, stay in the settlement and get what's put forward in the notice or opt out and consider suing on their own. And the 94% reduction, because it wasn't noticed, doesn't give all of those Americans the chance to actually make that rational choice. And I'd like to reserve the rest of my time, please. Okay. Good morning, Your Honors. Scott Bursar for Patrick Hendricks and the class. My firm and I were appointed class counsel in the district court proceedings. May it please the court, I'd like to begin with answering the two questions that the court posed in the order on May 4th. The first question was whether under 28 U.S.C. Section 1712 and under NRA HP inkjet printers, the district court could participate or could permissibly use the lodestar approach to calculate a fee award. The answer to that question, the answer to that question is very easy. The answer is yes. And the reason is the language of the statute itself makes this crystal clear before you even get to the HP inkjet case. Under Section 1712B1, the statute states that if a portion of the recovery is coupons, quote, an attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the case, close quote. That's 1712B1. And it doesn't say lodestar, but, of course, that is a description of what the lodestar approach is. I'm sorry. Go ahead. If that's true, then how is A different from B1? A deals, I believe, with a pure coupon settlement, whereas B. Well, B doesn't say it deals with a pure coupon settlement or not. The title to that section is Other Attorney's Fee Awards in Coupon Settlements. In Coupon Settlements is the same phrasing that's used in A. Right. Well, B is for when only a portion of the relief is in the form of coupons, which isn't the case here for all the reasons that Judge Smith addressed. But as between A and B, clearly, if the Court were to hold that coupons are at issue in this case, which, again, we don't think that's right, but if there is a coupon issue in this case, it would be dealt with under 1712B, not under A. And, Your Honors, 1712B2 makes this even clearer because 1712B2 states, quote, nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining fees. So the statute makes clear not once but twice in Belt and Suspenders fashion that lodestar is always permissible. But in calculating the lodestar, if you're really going to go there and we're going to call these coupons, at that point you'd have to have some redemption value of the coupons before you could start the lodestar method, wouldn't you? I don't think that's correct, Your Honor. I think that CAFA either applies or it does not apply. Okay. And so if you're doing a lodestar analysis, the terms of CAFA don't restrict that. So this business about waiting to see a redemption value just does not apply if you're taken outside of the statute because the Court is not awarding a fee that's attributable to the value of the coupons. But then the Court can't look at the value of the coupons, right? I mean, then you need to do the lodestar without considering the monetary value of the total settlement. No, I don't think that's correct, Your Honor. I think that just like Judge Smith said, courts make decisions about the value of non-cash items and relief all the time. And a court can evaluate the value of a settlement for purposes of approving the settlement, certainly, even if CAFA apply. The court would have to determine the settlement was fair, reasonable, and adequate in order to approve the settlement, let alone the fees. So if the court can do that for purposes of approving the settlement, it can do that for purposes of considering the circumstances and factors attributable to the lodestar by determining what's the extent of success. But if you determine success in part on a total dollar value and the total dollar value includes a coupon component, then aren't you under CAFA and you've got to look at the redemption rate? No, I don't think CAFA requires that. I think CAFA in 1712b2 where it says nothing herein would prohibit the application of a lodestar. I think you'd be reading that provision out of CAFA. So, I mean, maybe that would be a reading of CAFA, but how do you deal with NRAHP then? NRAHP says essentially the same thing CAFA says because at 716 F3rd at 1187, in NRAHP inkjet, in the conclusion section, the Ninth Circuit said, quote, a district court may award lodestar fees to compensate class counsel for any non-coupon relief they obtain, close quote. Right, but if you use the coupon relief as part of the total, then that doesn't cover it. Right, but there was $8 million in cash was recovered as a result of this settlement. But they used the 12, not the 8, to calculate the attorney's fees. That's just not accurate, Your Honor, because the court did not base the lodestar calculation on a $12 million valuation of the settlement. The court based the lodestar calculation on the hours, the reasonableness of the hours and hourly rates that were submitted. But didn't the court talk about 2.27 as a multiplier, and isn't that based on 12, not 8? The 2.27 multiplier was based on the court's evaluation of the result achieved in the aggregate. 12 million, not 8 million. It was 12. It was 12. That's why my colleague's questions, that's what I was about to get to, and she got it to it better. But, Judge Friedland, however you value the coupons, it's not clear that that would have made a difference in the court's evaluation of the lodestar. And so to say we should reverse what this judge did in his lodestar analysis because he overvalued the coupons. Well, he would have had to say 3.2 is enough or whatever the number would be instead of 2.27 if he had done it the way you're saying he should have or you're trying to retroactively do. There's nothing retroactive. I mean, he did a lodestar analysis. Right, but based on 12 million, not 8 million. But he did the lodestar analysis by saying there are no coupons at all. Well, that's because there are no coupons at all because he was following up. I understand, but now you're in a different hypothesis. So let's talk about that then. So whether this is a coupon, in the Walmart case, you could buy almost anything. Here you can only buy tuna. And in the Walmart case, we knew that the class members valued the Walmart voucher as much as cash because they had the option of getting the same amount of each. Here you had the option of getting half as much cash. So why don't we think we have no reason to think they value this voucher, coupon, whatever it is at only half as much. And at that point, don't we have a real difference from the Walmart case? Judge Friedland, I don't think there is a significant difference from the Walmart case. First, in terms of the amount that was provided, the gift cards in Walmart were for $12. You can buy a lot of things at Walmart for $12, and you can only buy tuna with this voucher. The biggest problem is you can only buy tuna. And then I want you to talk about the second part of her hypothetical question to you, which has also bothered me. What about the fact that on this one you got the cash or you could get two times the cash? In the Walmart, we knew what the cash was or we knew that the value of the coupon was equal to the cash. So you could buy a lot of things at Walmart for $12, but you can buy a lot of cans of tuna for the voucher that you got in this case or that the class members will get. Well, one of the points in the Walmart case was that you didn't have to buy DVDs. In this case, I'm not sure if it's tuna. I thought it was seafood products. The briefing is not consistent, but it might be salmon, but it's still a can of fish. That's not quite what you can buy at Walmart for $12. You can buy a whole lot of stuff for $12 at Walmart. Sure. Judge Lynn, that's true, but here you don't have to. In Walmart, you could only redeem the gift cards at Walmart. Here you can redeem the vouchers at any retailer that sells Star Kiss products anywhere in the United States of America. But why doesn't the Polo case give you a problem? I mean, if these class members are mad at these tuna sellers, they don't want to buy more tuna just like the Polo people didn't want to buy more Polo clothes. Yeah, that's a great question, Judge Friedland, and here's the difference in our case and the Polo case. The plaintiffs in our case never had any complaint about the tuna. The tuna was great. The plaintiffs loved Star Kiss tuna. The reason they sued the Star Kiss company was because there was not enough tuna in the can. They liked their tuna so much they wanted more tuna. Correct. In other words, the only problem here was we didn't get all the tuna we thought we were going to get. Correct. The allegation was an underfill of 4%, ranging from 4% to 16%, depending on the flavor of tuna. And so that's you're talking about a fraction of a decimal of an ounce of tuna, and that's why it was appropriate here. We weren't saying the tuna was of low quality. It was misrepresented in some way. There just wasn't enough of it, and that's why it was appropriate in this case to provide class relief in the form of tuna. Well, it was misrepresented, right? Isn't that the point? I mean, it's misrepresented how much would be in there, so you could be pretty mad at the tuna company and not want to buy more tuna from them, and you could want to spend your money on something else. Correct. And if a class member felt that way, they had the option to elect to receive cash and spend the cash. But only half as much. Only half. Well, it could not be determined in advance whether it would be half as much because it all depended on the claim rate. They were told it would be half as much. And that ended up being accurate because about one-third of the class members chose to receive the tuna vouchers and two-thirds opted for the cash. And the recovery here, by the way, was compared to the damages, the actual damages that were alleged, the recovery was many multiples of the shortage on a can of tuna. But given that people had this half as much cash and some people chose that and then other people thought, well, I'll take twice as much tuna than the cash, why should we assume that they valued that at the whole amount instead of just slightly more than the half as much cash? I don't think you have to make an assumption one way or the other, again, because this is not coupons. It's vouchers for all the reasons articulated in online DVD. So I don't think the court was required. So you don't think it mattered in in-ray DVD that the cash and the coupons were the same value? So, I mean, the court said we know they value it that much. The things that mattered in in-ray online DVD, and we looked at it very closely as we were designing this settlement because the vouchers here were designed to fall squarely under online DVD, the things that mattered that the court talked about was that there was no expiration date, that the vouchers or the gift cards, it was not a percent discount on a product. It was just money that could be spent at Walmart. They were freely transferable, and they could be used to buy a range of products. Now, we looked at that as we were negotiating this settlement with StarKist, and we specifically designed these vouchers to fall under online DVD. That's why they fit online DVD so nicely with only two differences. But you could have given a voucher that was anything you want to buy at Safeway or whatever company. I don't know how you would exactly achieve it, but here's your coupon for any grocery store, but for anything you want to buy, that would be more like in-ray DVD. Except that StarKist only sells tuna. They sell tuna in cans, they sell tuna in pouches, and they sell other fish products in cans and pouches. So Safeway was not a defendant in our case. We were negotiating with the StarKist company. And so that's why in our case the vouchers are superior to the Walmart gift cards and online DVD in one respect.  But they're more limited in the respect that you can't use it to buy some kind of a non-fish product. It has to be for the StarKist product. But that was appropriate because StarKist was the defendant in our case. I want to ask you a question about the $25, $50, and my recollection is a little under $2 and $4 as it came out. Correct. So isn't it a fair assumption that there's going to be a lower redemption rate when the amount of the, I'll call it a voucher for this question, when the dollar amount is less, people are less incentivized to use a lower number voucher? And if the answer to that is yes, and we look to the alternative Lodestar calculation, should we be concerned about the fact that the court uses this not-rounded number to get to the same result, 30, which is above the presumptive rate in the Ninth Circuit? I think the answer is we just can't know what the effect is going to be. We could speculate that the redemption rate might be lower because the amount got diluted down. But, again, I don't know. I mean, what that really speaks to is the success of the notice plan and the success of the settlement, that you had more than 2.5 million class members file claims in this case. So I don't think that that's something to look at as a factor that weighs against the settlement or against the district court's evaluation of the fee here. And I don't think we can know one way or the other what effect that's going to have on the redemption rate. But I also want to make the point to this court that arguments about evaluating the success of the case for purposes of the Lodestar analysis, they just weren't raised in the district court. So the objectors never argued to Judge Gilliam, you can't do a Lodestar analysis until you see the coupon redemption rate. So it's not fair to the district court to come in after the fact with an argument that was never raised below and overturn his order on that basis. The objectors made no challenge to the Lodestar analysis at all in the court below. Well, it would be hard to make a challenge to the Lodestar analysis if the court had already determined it wasn't a coupon at all. And now we're back and all we've got is this, if you will, voucher. That's why I ask him, if it's a voucher, you have no challenges to this decision at all. And he'd already said it's a voucher. So how are we going to – he said it isn't a coupon. So why would they make a big challenge about the Lodestar? Well, because, Your Honor, we made a fee application, and one basis for our fee application was the Lodestar approach. And our fee application was on the record and publicly on the settlement website with all the detailed time records at least two weeks before the objection deadline. And not a single objector in the district court raised any issue with the Lodestar analysis. So I think it's this court's practice to not decide a case on an issue that was not raised below. So this business about footnote 18 in H.P. Inkjet and you can't do a Lodestar analysis until you see the redemption on the coupons, if they are coupons, that's an argument they never made to Judge Gilliam, and it's been made for the first time here today in this court. And ordinarily this court does not base decisions that are raised for the first time, not even in the briefs, not in the court below, not in the briefs on this appeal, but for the first time at oral argument. That's not a sound basis for making a decision. And with that, unless the court has any other questions for me, we'll submit on that. Thank you. Thank you, Your Honor. You saved a couple of minutes. Thank you, Your Honor. So the other thing that wasn't raised in the briefing or below was a defense of the attorney's fee on the basis of a Lodestar under CAFA or a defense of the attorney's fee for only the $8 million in cash presented. And, in fact, if you recalculate the attorney's fee just on the $8 million in cash, it becomes a 40 percent fee, wildly above the 25 percent benchmark here. And the district court already reduced the fee. But if you didn't make any objection, how were they to make the argument? Well, Your Honor, our position was that these were coupons. And, in fact, the court below reduced the attorney's fee request. So the court below said they were asked for a third, and they only awarded 30 percent. And then they did a Lodestar crosscheck. There was no contemplation of this being a CAFA-compliant Lodestar-only award. It was a Bluetooth Lodestar crosscheck that came to the 2.27 multiplier. Okay. We've heard both arguments about what wasn't argued below. What else do you got? So I'll just point out that counsel said just a minute ago that you could speculate about the redemption rate on these coupons based on their value. And that's exactly what Congress doesn't want the courts doing anymore by passing CAFA. They don't want these speculations that coupons are worth 100 percent or 70 percent or even probably more realistically 2 or 3 percent. They want the courts to wait and say, look, what's the value of the coupons? Award an attorney's fee on that basis. How long do they have to wait? If they don't have any expiration, how can it ever be determined? And, Your Honor, that's where this case is just like HP inkjet printer in that it invited error by having that kind of a term. But I'll point out that HP – But it's kind of weird, right? Because if you then have an expiration date, it becomes more of a coupon. I mean, it's better for the class if it's not an expiration date, but then they get in this bind. And the other point on this coupon issue is that HP inkjet printer actually contemplated this question as well in footnote 19, but didn't decide it, but pointed out that you could have multiple rounds of attorney's fee awards. You could go back in six months or at some point and say, okay, how many of these got redeemed? Even in that, that's why I came to you with the question I did. Even with that, if you were going to have multiple rounds, it seems to me the attorney's fees, that someday somebody is going to have to put an expert in front of us and suggest what's going to be redeemed and what isn't and what's going to be the rate and why couldn't you do it right up front and get it done? I see I'm out of time. May I briefly answer? Sure. I wouldn't ask the question if I didn't think you could answer it. So, Your Honor, I think that we might have a different case. If we waited until some amount of coupons had been redeemed and said, okay, what's the value of these, and then brought in an expert to say, how many of them do we think will be redeemed in the future? But these coupons haven't been issued. We don't know the fine print on the coupon, and there's a lot of room for fine print on the coupon. We don't know the denomination of the coupon. We don't know if there's going to be any issues in redeeming the coupon. And if we don't have any of that, I don't know how you could make an expert determination. Thank you. Thank you, Your Honor. All right. All these cases, 9-2, 9-3, 9-4, 9-5, 17-020, and 0-5-6 are submitted. And we'll now move to 16-56272, Counting v. Coles Department Store.
judges: N.R. Smith, Friedland, Lynn